# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| TITAN ATLAS MANUFACTURING, INC., and STRATA MINE SERVICES, LLC, <br>     Plaintiffs <br><br> v. <br><br> FRANK A. SISK and PRECISION MINE REPAIR, INC., <br>     Defendants | **MEMORANDUM OPINION** <br><br> Case No. 1:11cv00012 |

This case currently is before the court on the defendants' Motion For Jurisdictional Discovery And For An Extension Of Time To File A Reply In Support Of Their Motion To Dismiss. (Docket Item No. 34) ("Motion"). In the Motion, the defendants request that the court allow limited jurisdictional discovery to include: (1) certain interrogatories and document requests to both plaintiffs and (2) depositions of the plaintiffs' four fact declarants[1] and Federal Rules of Civil Procedure Rule 30(b)(6) witnesses for the plaintiffs. The defendants further request that the court allow them one week from the completion of such limited jurisdictional discovery in which to file their reply to the plaintiffs' Opposition To Defendants' Motion To Dismiss, Stay, or Transfer. (Docket Item No. 32). In the alternative, the defendants ask that, if the court denies the Motion, that it be granted a two-week extension to file such reply. By Order entered July 11, 2011, (Docket Item No. 43), this court granted the defendants until July 19, 2011, to file their reply to the plaintiffs' Opposition To Defendants' Motion To Dismiss, Stay,

---

[1] The declarants are Jeffrey Hamrick, David Nardo, Richard Werth and Jeremy Blackburn.

1

Or Transfer. That being the case, that portion of the defendants' Motion seeking an extension of time to file such reply now is moot. The plaintiffs have partially opposed the defendants' Motion. (Docket Item No. 38). The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(A). A hearing was held on the Motion on July 7, 2011, before the undersigned. At that hearing, the defendants also moved for an evidentiary hearing to determine the existence of both personal jurisdiction and subject matter jurisdiction. Based on the written arguments and oral representations of counsel, and for the reasoning set out below, I will deny the Motion. I also will deny the defendants' motion for an evidentiary hearing.

Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993)). At the same time, however, district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Carefirst*, 334 F.3d at 402 (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). It is clear that limited jurisdictional discovery may be warranted to explore jurisdictional facts in some cases. *See Mylan Labs.*, 2 F.3d at 64 (citing *McLaughlin v. McPhail*, 707 F.2d 800, 806-07 (4th Cir. 1983)). While Federal Circuit law governs substantive issues in patent-related cases, a district court is guided by regional circuit law in determining whether to allow jurisdictional discovery, as discovery issues are not unique to patent law. *See Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010). In *Carefirst*, the Fourth Circuit held that when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery

when "against the defendant's affidavits" the plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state...." 334 F.3d at 403 (quoting *McLaughlin*, 707 F.2d at 806). Similarly, in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002), the Fourth Circuit upheld the district court's refusal to allow the plaintiff to engage in jurisdictional discovery where the plaintiff's request was based on "conclusory allegations." Likewise, in *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988), the district court denied the plaintiff's request for jurisdictional discovery where the plaintiff's claim of personal jurisdiction appeared to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, noting that such exercise amounted to nothing more than a "fishing expedition." This sentiment was echoed in *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 216 n.3 (4th Cir. 2002), in which the Fourth Circuit held that where the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction, there was no reason to overturn the district court's exercise of discretion in denying jurisdictional discovery.

The defendants conceded at the hearing on this matter that this Motion presents in an odd posture, as it is the defendants who are seeking jurisdictional discovery, not the plaintiffs. It is well-settled that it is the plaintiffs who bear the burden of establishing both personal jurisdiction and subject matter jurisdiction, and it is, typically, the plaintiff who seeks such jurisdictional discovery in an attempt to avoid dismissal of its case. However, here, it is the defendants who seek jurisdictional discovery in order to prepare a better reply to the plaintiffs' opposition to the defendants' motion to dismiss. In applying the jurisdictional discovery analysis in the current circumstances, I find that the defendants have not

alleged a sufficient need for such information because they either have or should have access to the information upon which they seek discovery, they have not made a showing that information garnered through such discovery would change the jurisdictional analysis, and they have not submitted affidavits calling into question the veracity of the information contained in the affidavits submitted by the plaintiffs. That being the case, I find that the purpose of allowing jurisdictional discovery would not be furthered under such circumstances, and I find that even limited jurisdictional discovery is not warranted.

### A. *Personal Jurisdiction*

Federal Circuit law governs the substantive issue of whether a court may exercise personal jurisdiction over a particular defendant in patent-related cases. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002) (citing *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)). A determination of whether personal jurisdiction exists over an out-of-state defendant involves a two-step inquiry. First is whether the forum state's long-arm statute permits service of process.[2] Second is whether the assertion of personal jurisdiction violates due process. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. General personal jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

---

[2] Virginia's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth. ..." VA. CODE ANN. § 8.01-328.1 (2007 Repl. Vol. & 2011 Supp.).

When such is the case, the cause of action need not have any relationship with the defendant's contacts. *See Silent Drive, Inc. v. Strong Indus,. Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Specific personal jurisdiction can exist even if the defendant's contacts with the forum are "isolated and sporadic." *Silent Drive*, 326 F.3d at 1200 (citations omitted). Whether specific personal jurisdiction exists requires a three-part inquiry: (1) whether the defendant purposely directs its activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *See Autogenomics*, 566 F.3d at 1018. Additionally, it is well-settled that in evaluating specific personal jurisdiction in a declaratory action against a patentee, as here, the court should look only at the defendant's efforts to enforce the patent-in-suit and may not consider a defendant's efforts to market or sell commercial embodiments of the patent-in-suit. *See Autogenomics*, 566 F.3d at 1020 (citing *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008)).

With regard to personal jurisdiction, the defendants seek jurisdictional discovery related to the following factual issues raised by the plaintiffs that they claim require investigation to facilitate the preparation of an appropriate reply: (1) information relating to Strata's sales of the accused systems both within and outside of Virginia; (2) information relating to the plaintiffs' allegation that the defendants exercise a measure of control over Strata as PMR's distributor; (3) information relating to whether Strata's principal operating office was in Virginia at the time that the Distribution Agreement was negotiated, such that the agreement can be viewed as tied to Virginia; and (4) information relating to the plaintiffs' claims that Sisk controls PMR. With regard to subject matter jurisdiction, the defendants request discovery related to the following issues: (1) Titan's alleged

indemnity obligation to Strata; and (2) conversations that allegedly occurred between Strata personnel and Sisk.

First, the defendants seek discovery to explore Strata's contacts with Virginia.[3] However, the plaintiffs are correct that it is the actions of the defendants that are to be scrutinized in determining whether this court has jurisdiction over them. Information regarding the defendants' own actions, of course, is within the defendants' knowledge and, therefore, would not require jurisdictional discovery. Moreover, as the plaintiffs argue, even if Strata's contacts were relevant to the jurisdictional issue, the defendants have not sufficiently explained why they would not have knowledge of the specific contacts alleged by the plaintiffs in their opposition to defendants' motion to dismiss at pages 9 through 14 since all of the alleged contacts relate to actions taken by the defendants themselves. Specifically, the plaintiffs allege the following contacts with Virginia by the defendants: (1) entering into a Distributorship Agreement with Strata to supply 3D panels to various states including Virginia; (2) receiving orders from Virginia; (3) shipping products into Virginia; (4) directly conducting pull tests[4] in Virginia as required by

---

[3] At the July 7, 2011, hearing on the Motion, the plaintiffs represented to the court that they were not seeking to impute any of Strata's actions to the defendants.

[4] In his affidavit, Jeffrey Hamrick, Vice President of Strata Mine Services, LLC since August 2006, testified that the 2007 Distributorship Agreement obligated PMR to conduct on-site "pull tests" that establish the depth to which rebar anchors must be placed in a given area of a mine in order to ensure that a mine seal will be strongly anchored. (Attachment No. 3 to Docket Item No. 32, ("Hamrick Affidavit"), at 3-4.) He testified that a PMR employee attended or conducted a pull test in Deep Mine #26 in Virginia on or about January 31, 2009. (Hamrick Affidavit at 4.) He further testified that a PMR employee attended or conducted a pull test in the Buchanan Mine #1 in Virginia on or about February 4, 2009. (Hamrick Affidavit at 4.) Additionally, Hamrick testified that on or about April 24, 2009, one or more PMR employees conducted at least one pull test for at least one of the mine seals installed in a Kentucky mine owned by a mine operator headquartered in Virginia. (Hamrick Affidavit at 4.) Additionally, David Nardo, a former employee of PMR testified in his affidavit that he and another PMR employee personally attended or conducted pull tests on seals in Virginia in 2008 for Jewell

the Distributorship Agreement; (5) directly contracting with mining companies headquartered in Virginia; and (6) directly contracting with another distributor, GMS, to install 3D panels in Virginia. Because there simply is no reason that the defendants would not have access to such information, I find that jurisdictional discovery on these issues is not warranted.

Next, the defendants seek discovery of "information relating to Strata's sales of the accused systems both within and outside of Virginia, because one factor in determining general jurisdiction is the proportion of sales within the jurisdiction versus outside of it." The plaintiffs argue again, however, that the proper focus is on the defendants' contacts with the forum, not Strata's. They argue that "a broad distributorship network in a forum state that generates a substantial amount of revenue *for the defendant* may warrant general jurisdiction." *Taltwell, LLC v. Zonet USA Corp.*, 2007 U.S. Dist LEXIS 93465, at *19-20 (E.D. Va. 2007) (citing *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (emphasis added)). In this vein, the plaintiffs have submitted the affidavit of Richard Werth, head of the Seals Division and Assistant Vice President of Strata. (Attachment No. 5 to Docket Item No. 32, ("Werth Affidavit")). Werth testified that, from its office in Sword's Creek, Virginia, Strata ordered an estimated total of several million dollars of materials from defendant PMR between 2007 and the summer of 2009. (Werth Affidavit at 1.) He further testified that PMR shipped seal materials costing approximately $500,000 to the Jewell Smokeless Mine, the Buchanan Mine and the Deep Mine #26, all of which were located in Virginia, in numerous shipments from February 2008 through May 2009, for installation

---

Smokeless Coal Corporation and in 2009 for Deep Mine #26 located in Virginia. (Attachment 4 to Docket Item No. 32, ("Nardo Affidavit"), at 3.) He further testified that he conducted pull tests in Kentucky for Black Mountain, which is headquartered in Virginia. (Nardo Affidavit at 3.)

therein. (Werth Affidavit at 1-2.) Lastly, Werth testified that since August 2007, Strata ordered, and PMR shipped, seals and overcast materials exceeding a value of $1,000,000 specifically for installation in out-of-state mines owned by mine operators headquartered in Virginia, including James River Coal Company and Massey Energy Corporation. (Werth Affidavit at 2.) The defendants have provided no affidavits disputing this evidence, and I find that it is the defendants who are in the best position of knowing whether those amounts constitute a substantial amount of revenue for them. Therefore, I find that jurisdictional discovery is not warranted on this issue.

Third, the defendants seek discovery to explore what the plaintiffs meant by the term "control" in their opposition with regard to PMR's relationship with Strata. While the plaintiffs, in their opposition to the motion to dismiss, stated that "PMR actually had at least some control over those distributors under distributorship agreements such as the 2007 Distributorship Agreement," the plaintiffs state that they have not argued that personal jurisdiction may be found based on Sisk's and PMR's "control" over Strata. Instead, the plaintiffs reiterate their argument that personal jurisdiction may be found based on Sisk's and PMR's actions of intentionally seeking out and knowingly engaging in sales with Virginia residents and Sisk's and PMR's deriving of substantial revenue from sales in Virginia. Therefore, I find that jurisdictional discovery is not warranted on this issue as the plaintiffs are not seeking to base the court's exercise of personal jurisdiction over the defendants on any alleged "control" that PMR had over Strata through the Distributorship Agreement.

Fourth, the defendants are seeking discovery to explore whether Strata's primary operating office was located in Virginia when the Distributorship

8

Agreement was negotiated. As noted above, the plaintiffs have submitted the affidavit of Jeffrey Hamrick, the Vice President of Strata since August 2006. In his affidavit, Hamrick testified that "[w]hen the Distributorship Agreement was negotiated in 2007, although Strata's headquarters were located in Georgia, Strata's primary operating office and sole warehouse was in Sword's Creek, Virginia.... During the negotiations in 2007, Frank Sisk and other PMR employees were aware that Strata's primary operating office and warehouse were located in Sword's Creek." (Hamrick Affidavit at 2.) Hamrick testified that Strata relocated its primary operating office from Virginia to Ohio in the summer of 2009, but continues to operate the Sword's Creek office and warehouse as a regional support center. (Hamrick Affidavit at 2.) The defendants have offered no affidavits to contradict Hamrick's testimony. In fact, they stated that they simply do not know whether this was true and would like to conduct discovery to determine whether this was, in fact, the case. To the contrary, however, Sisk and PMR know what was or was not within their knowledge when this agreement was entered. Therefore, I find that jurisdictional discovery is not warranted under these circumstances.

Lastly, the defendants seek jurisdictional discovery to explore whether the patentee, Sisk, as the owner and president of PMR, controls the licensee, PMR. The plaintiffs do not dispute the relevance of this information to the court's jurisdiction over Sisk. Specifically, the defendants seek to depose David Nardo, a former PMR employee, to determine the relationship between Sisk and PMR. The plaintiffs attached Nardo's affidavit to their opposition to the motion to dismiss. In his affidavit, Nardo testified to the control that Sisk exerted over PMR. He testified that Sisk had a dedicated office within PMR's office area and that he was in the office frequently. (Nardo Affidavit at 3.) He testified that Sisk was "the

boss." (Nardo Affidavit at 3.)  Nardo testified that key personnel reported to Sisk, including Harry Riddle, the general manager, Jeff Kearns, who was responsible for purchasing and outgoing shipments, and Jamie Lutz, who worked in sales. (Nardo Affidavit at 3.)  He testified that Kearns or Riddle spoke with Sisk on a daily basis. (Nardo Affidavit at 3.)  Nardo testified that Sisk "kept his thumb on how many panels were ordered and where they had to go."  (Nardo Affidavit at 3.)  He testified that Sisk would sometimes visit the production shop where the panel machine operated and that he would be busy there. (Nardo Affidavit at 3.)  Nardo testified that Sisk kept a "pretty close rein" on the overcast work. (Nardo Affidavit at 3.)  He further testified that, upon information and belief, Sisk had or has check signing authority for PMR's bank account. (Nardo Affidavit at 3.)  Nardo testified that during his employment at PMR from May 2007 through September 2008, Sisk had hiring and firing power. (Nardo Affidavit at 3-4.)  He also testified that it was Sisk who applied to the Mine Safety and Health Administration, ("MSHA"), for approval of PMR's 120-PSI blast seal design in MSHA District No. 5 (i.e. Virginia) and other MSHA districts.  (Nardo Affidavit at 4.)  Finally, Nardo testified that correspondence from MSHA regarding the approvals was addressed to Frank Sisk.  (Nardo Affidavit at 4.)

Yet again, the defendants have not challenged the veracity of the information contained in Nardo's affidavit, and it is undoubtedly the defendants who are in the best position to explain the relationship between Sisk and PMR. Furthermore, as the plaintiffs state, they have provided other information showing Sisk's control over PMR so that deposing Nardo is unnecessary. This information includes the following: (1) Sisk is the owner of PMR; (2) Sisk is the president, secretary and registered agent of PMR; (3) Sisk negotiated the relationship with Strata; (4) Sisk sent letters regarding the patent on PMR letterhead to Strata and its

customers; and (5) Sisk served as the primary correspondent for communications between PMR and MSHA regarding PMR's seals. The defendants have not challenged any of these factual allegations. For all of these reasons, I find that jurisdictional discovery on this issue is not warranted.

*B. Subject Matter Jurisdiction*

It is well-settled that a district court may exercise subject matter jurisdiction over a declaratory judgment action only if the action presents a "case of actual controversy." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)). The case must be "of sufficient immediacy and reality" to warrant declaratory relief. *Genentech*, 998 F.2d at 936 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The court's determination as to whether there is an actual controversy in patent actions involves a two-part inquiry: (1) whether the declaratory plaintiff has acted in such a way that the patentee asserts infringes the patent, or is preparing to act in such a way; and (2) whether the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. *See Genentech*, 998 F.2d at 936 (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735-36 (Fed. Cir. 1988)). When a patentee has explicitly charged that a current activity of the declaratory plaintiff is an infringement, "certainty has rendered apprehension irrelevant, and one need say no more." *Genentech*, 998 F.2d at 937 (quoting *Arrowhead*, 846 F.2d at 736).

With regard to the court's subject matter jurisdiction, the defendants argue that jurisdictional discovery is necessary to: (1) explore Titan's indemnity obligation to Strata; and (2) to explore the "numerous unsubstantiated factual

11

allegations regarding conversations that allegedly took place between Strata personnel and [] Sisk." The plaintiffs do not dispute the relevance of Titan's indemnity obligation to Strata to the court's subject matter jurisdiction, and the plaintiffs have agreed to produce a redacted copy of the agreement from which this indemnification obligation arises.[5] The plaintiffs state that this agreement is signed by Titan and Strata prior to the institution of this action, and they submit that this agreement is sufficient to establish subject matter jurisdiction. Therefore, I find that jurisdictional discovery on this issue is unnecessary.

Likewise, I agree with the plaintiffs that discovery related to the "numerous unsubstantiated … conversations that allegedly took place between Strata personnel and … Sisk" is unnecessary. As the plaintiffs emphasize, they refer to only one conversation between Sisk and Strata that is relevant both to subject matter jurisdiction and to personal jurisdiction over Sisk. That conversation occurred in January 2011 when Sisk telephoned Hamrick and told him "You're done … I'm pulling the plug." The plaintiffs allege that Sisk also asserted that Titan's supply of panels to Strata and/or Strata's use of those panels would constitute infringement of the '231 Patent. Moreover, the plaintiffs assert that during this telephone conversation, Sisk referred to Titan's panels as being "illegal." In his affidavit, Hamrick testified that he "understood [Sisk] to mean that if Strata continued to purchase panels from Titan . . . Strata's use of those panels to build stoppings and overcasts would infringe the '231 Patent." (Hamrick Affidavit at 5.) At the hearing on the Motion, defense counsel represented to the court that Sisk did nothing other than inform Hamrick of Sisk's patent rights. In any event, because Sisk was a party to this conversation, he is in the best position of knowing

---

[5] At the hearing on the Motion, the plaintiffs stated that they intended to produce this agreement to the defendants by July 12, 2011.

what occurred during this conversation, and I see no need for jurisdictional discovery on this issue. Again, the defendants have submitted no affidavits relating to this issue. Thus, I find that jurisdictional discovery on this issue is not warranted.

## CONCLUSION

Based on the above-stated reasons, I will deny the Motion insofar as it seeks jurisdictional discovery. I also will deny the defendants' motion for an evidentiary hearing.

ENTERED: This 15th day of July, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE