# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| **TITAN ATLAS MANUFACTURING INC. and STRATA MINE SERVICES, LLC,** | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 1:11CV00012 |
| v. | ) ) |
| **FRANK A. SISK and PRECISION MINE REPAIR, INC.,** | ) ) ) |
| Defendants. | ) ) |

| | |
|---|---|
| **FRANK A. SISK and PRECISION MINE REPAIR, INC.,** | ) ) ) |
| Plaintiffs, | ) ) Case No. 1:11CV00068 |
| v. | ) ) |
| **TITAN ATLAS MANUFACTURING INC. and STRATA MINE SERVICES, LLC,** | ) ) ) ) |
| Defendants. | ) ) |

### OPINION AND ORDER

*Jerome E. McDonald, Black, Hedin, Ballard, McDonald, P.C., Mt. Vernon, Illinois, and James A. Gale, Javier Sobrado, and Nicole D. Galli, Feldman Gale, P.A., Miami, Florida, and Philadelphia, Pennsylvania, for Frank A. Sisk and Precision Mine Repair, Inc.; Larry E. Helper and Beth A. Bauer, HelperBroom, LLC, Edwardsville, Illinois, and Kevin M. Drucker and David L. Cargille,*

*Mendelsohn, Drucker, & Associates, P.C., Philadelphia, Pennsylvania, for Strata Mine Services, LLC, and Titan Atlas Manufacturing, Inc.*

In these consolidated actions involving alleged patent infringement and related state law claims, the defendants in the 1:11cv00068 action filed, while the case was pending in the Southern District of Illinois, a Motion to Dismiss, Stay or Transfer.  After the motion was filed, the case was transferred to this district.  Thus, only the request to dismiss the claims of breach of contract and tortious interference with a contractual relationship are still at issue.  After careful review of the briefs filed in the Illinois court, I decline to dismiss the breach of contract claim but will dismiss the tortious interference claim.

I

As shown by the Amended Complaint, this dispute arises out of the Distributorship Agreement ("Agreement") between Frank A. Sisk and Precision Mine Repair, Inc. ("PMR"), on the one hand, and Strata Mine Services, LLC ("Strata") and Titan Atlas Manufacturing, Inc. ("Titan"), on the other.  The Agreement relates to products used in underground coal mines.  In the Agreement, PMR granted Strata "a non-exclusive and non-transferable right to purchase, distribute, sell and construct" PMR's "Steel Anchored and Reinforced Seals" ("Seals").  (Am. Compl. Ex. B ¶¶ 1, 2.)  Strata's distributorship rights would

become exclusive "at a particular mine after they [sic] have contracted or installed [the Seals] at the mine site." (*Id.* ¶ 1.)

One of the component parts of the Seals is called "3D panels." The 3D panels are not specifically referenced in the Distributorship Agreement. Nowhere in the Agreement is it stated that Strata must purchase all materials used in the Seals from PMR.[1] At some point in late 2010, PMR learned that Strata had purchased 3D panels from another manufacturer, i.e., Titan. (Am. Compl. ¶¶ 16-17.) By a letter dated January 3, 2011, PMR informed Strata that it believed Strata had breached the Agreement. The letter provided Strata thirty days to cure its alleged breach.[2] (*Id.*) On February 14, 2011, PMR notified Strata that it was terminating the Agreement, except for certain ongoing projects. (Am. Compl. Ex. F.)

II

The first question to be addressed is the choice of law. This case was transferred to this court from the Southern District of Illinois pursuant to 28 U.S.C.A. § 1404(a) (West 2006). Under those circumstances, the transferee court

---

[1] The Agreement notes that there are "Standard Terms and Conditions" attached as Exhibit C. However, Exhibit C has not been provided to the court in any filing.

[2] Strata conceded that it had purchased 3D panels from Titan but denied such purchase constituted a breach of the Agreement. (Am. Compl. Exs. D, E, and G.)

must apply the choice of law rules of the transferor forum. *MainStreet Bank v. Nat'l Excavating Corp.*, No. 1:10cv1230, 2011 WL 2360388, at *4 (E.D. Va. June 8, 2011) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 636-37 (1964)). Therefore, I must apply Illinois' choice of law rules to the breach of contract and tortious interference claims.

Where the contract does not contain a choice of law clause, Illinois applies a "most significant contacts" test to determine the choice of law for contract disputes. *Olsen v. Celano*, 600 N.E.2d 1257, 1260 (Ill. App. Ct. 1992). The contacts evaluated include "'the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation and business of the parties.'" *Id.* (quoting *Illinois Tool Works, Inc. v. Sierracin Corp.*, 479 N.E.2d 1046, 1050-51 (Ill. App. Ct. 1985)). Under the significant contacts test, Illinois law should govern this contract dispute. PMR is located in Illinois, the contract was executed in Illinois and PMR's performance as supplier took place in Illinois. (Am. Compl. ¶¶ 3, 13)  Although at least through the summer of 2009 some of Strata's performance occurred in Virginia, Strata's performance was spread through several states (Virginia, West Virginia, Pennsylvania, Ohio, and possibly Georgia).[3]  Thus, although several states have

---

[3] Strata's corporate headquarters are in Georgia. (Am. Compl. ¶ 4.) Strata's principal place of operations at the time of contracting was in Swords Creek, Virginia, but in the summer of 2009, Strata moved its principal place of operations to Ohio.

some interest in this contract, Illinois has the most significant contacts.  Illinois law will govern the breach of contract claim.

To determine choice of law for a claim of tortious interference, Illinois also applies a "most significant relationship" test.  *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 864 (N.D. Ill. 2002).  The court must consider "(1) the place of injury; (2) the place of the tortious conduct; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered."  *Id.*  Absent the weight of other factors, the place of injury controls.  *Id.*  Because PMR is located in Illinois and the economic impact of the alleged tortious interference with the contract will be felt in Illinois, the place of injury is Illinois.  *See id.*  Therefore, I will apply Illinois law to the tortious interference claim.

### III

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the requirements for pleading facts sufficient to state a claim under Federal Rule of Civil Procedure 8(a).  A plaintiff must provide "more than labels and conclusions."  *Id.* at 555.  Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). But if there are well-pleaded

---

(Jeffrey Hamrick Decl. ¶ 6, June 7, 2011.)  Strata shipped Seals to mines in West Virginia and Pennsylvania.  (Am. Compl. ¶ 17, 20.)

factual allegations, then a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## A

Under Illinois law, the elements of a breach of contract action are "(1) the existence of a valid and enforceable contract, (2) performance by plaintiff, (3) breach by defendant, and (4) injury to plaintiff resulting from that breach." *Kastel v. Winnetka Bd. of Educ.*, 975 F. Supp. 1072, 1083 (N.D. Ill. 1997). The plaintiffs claim that Strata's purchase of 3D panels was a breach of the Agreement because the Agreement established Strata as the exclusive dealer for PMR's Seals and therefore Strata was obligated to use only PMR's 3D panels in those Seals. There is no dispute that Strata purchased 3D panels from a supplier other than PMR.

On its face, the Agreement does not require Strata to purchase anything exclusively from PMR -- even the final products themselves. The Agreement grants Strata exclusive distributorship rights once Strata establishes itself at a particular mine. (Agreement ¶ 1.) PMR argues that once Strata obtained exclusive rights to deal the PMR Seals, it was "under an obligation to use best efforts to promote the sale of PMR's [Seals], and the materials used therein, at least with regard to all its prior customers, which it breached by using a competitor's panels in mines where it had exclusive rights." (Pl.'s Mem. In Opp. to Defs.' Mot. to Dismiss 13.)

Under the Illinois version of the Uniform Commercial Code, a "lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale."  810 Ill. Comp. Stat. 5/2-306(2) (2009).  The comment to the statute notes, "Under such contracts the exclusive agent is required, although no express commitment has been made, to use reasonable effort and due diligence in the expansion of the market or the promotion of the product, as the case may be."  (*Id.* U.C.C. cmt. ¶ 5)  This implied obligation on the part of the buyer arises in exclusive dealing arrangements to protect the seller, "who in an exclusive arrangement depends solely upon the buyer to resell the goods."  *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1125 (3d Cir. 1992).  As the Third Circuit explained, "The obligation of best efforts forces the buyer/reseller to consider the best interests of the seller and itself as if they were one firm."  *Id*.

Given the implied duty imposed under Illinois law, it is plausible that where Strata achieved exclusive distribution rights of PMR's products, it was bound to use its best efforts to promote those products.  Purchase of an integral component part from a competitor could be a breach of that duty.  Therefore, I find that PMR has stated a plausible claim that Strata breached the Agreement by purchasing non-PMR components for the PMR products.

B

I do not, however, find that the plaintiffs have alleged sufficient facts to state a claim of tortious interference with the contract or business expectancy against Titan.  Under Illinois law, a plaintiff must show (1) a valid business relationship or a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's relationship or expectancy; (3) the defendant intentionally and unjustifiably interfered with the relationship or expectancy; and (4) damages suffered by the plaintiff from such interference.  *See Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 502 (7th Cir. 1998); *see also V&V Supremo Foods, Inc. v. Sloan Acquisition Corp.*, No. 01 C 9913, 2002 WL 1759787, at *4 (N.D. Ill. July 29, 2002).  The Amended Complaint contains almost no facts about Titan at all.[4]  It does not contain sufficient factual allegations to state a plausible claim that Titan either knew of the Agreement before selling 3D panels to Strata, or that Titan, intentionally and without justification, interfered with the Agreement.  The claim for tortious interference against Titan must be dismissed.

IV

For the forgoing reasons, it is **ORDERED** as follows:

---

[4] The Amended Complaint states that "[o]n information and belief, sometime prior to December 31, 2010, Strata began purchasing [the Seals] from [Titan], whereby [Titan] would provide Strata with panels and other materials for distribution…."  (Am. Compl. ¶ 16.)

1. Defendant's Motion to Dismiss, Stay, or Transfer (ECF No. 19) is GRANTED IN PART AND DENIED IN PART;

2. Defendants' Motion to Dismiss Count I ("Breach of Contract by Strata") of the First Amended Complaint is DENIED; and

3. Defendant's Motion to Dismiss Count II ("Tortious Interference with a Contractual Relationship or Business Expectancy by TAMI") of the First Amended Complaint is GRANTED.

ENTER: October 22, 2011

/s/ James P. Jones
United States District Judge