# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TITAN ATLAS MANUFACTURING INC. and STRATA MINE SERVICES, LLC,** | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:11CV00012 (Lead) |
| v. | ) ) | |
| **FRANK A. SISK and PRECISION MINE REPAIR, INC.,** | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| **FRANK A. SISK and PRECISION MINE REPAIR, INC.,** | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:11CV00068 |
| v. | ) ) | |
| **TITAN ATLAS MANUFACTURING INC. and STRATA MINE SERVICES, INC.,** | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

*Mark D. Loftis, Woods Rogers PLC, Roanoke, Virginia, and James A. Gale and Javier Sobrado, Feldman Gale, P.A., Miami, Florida, for Frank Sisk and*

*Precision Mine Repair, Inc.; Angela H. France and Malik K. Cutlar, PCT Law Group, PLLC, Alexandria, Virginia, for Titan Atlas Manufacturing, Inc.; Steven R. Minor, Elliott Lawson & Minor, Bristol, Virginia, and James R. Davis, J. Davis Law Firm, P.C., Daniel Island, South Carolina, for Franz X. Meier, XJM Company, LLC, StructurTech Systems, LLC, and FXM & Company, LLC.*

The court denied a Motion to Intervene in these consolidated cases and entered a Consent Final Judgment and Permanent Injunction sought by agreement of the existing parties. Thereafter, the parties seeking intervention filed a timely Motion to Alter or Amend Judgment, seeking reconsideration of the prior order and judgment, which motion is now before the court for decision. For the reasons that follow, the motion will be denied.

I

These two consolidated cases, filed in this court in 2011, involved a product used in the ventilation of underground coal mines. In one case Frank Sisk and Precision Mine Repair, Inc. (collectively, "PMR") asserted claims against Titan Atlas Manufacturing, Inc. ("Titan") and Strata Mine Services, LLC ("Strata") for patent infringement, inducement to infringe, breach of a distributorship agreement, and unfair competition. In the other case Titan and Strata sought a declaratory judgment against PMR, asserting that Titan and Strata did not infringe or induce infringement of the patent in question, and that in any event the patent was unenforceable. Eventually PMR and one of the alleged infringers, Strata, settled

their respective claims and I entered a Consent Judgment and Order of Dismissal on April 24, 2013.  Thereafter, on June 28, 2013, I entered a default against the other alleged infringer, Titan, dismissing its claims and scheduling a trial as to the damages to be awarded against it on PMR's claims.[1]

On October 18, 2013, a few days prior to the trial on damages, PMR and Titan announced that they had settled their dispute and filed a Notice of Settlement and Stipulation of Dismissal.  On the same day, a Motion to Intervene was filed by Franz X. Meier, XJM Company, LLC, StructurTech Systems, LLC, and FXM & Company, LLC (collectively, "StructurTech").  On October 21, 2013, after consideration of these filings, I denied the Motion to Intervene and entered a Consent Judgment and Permanent Injunction requested by PMR and Titan as a condition of their settlement.  Pursuant to the Consent Judgment and Permanent Injunction, I ruled that PMR's patent-in-suit was valid, that Strata had infringed the patent using certain products (called "3D Panels") purchased from Titan and that Titan was enjoined from further such infringement, including selling 3D Panels to Strata or any other third party. Thereafter, StructurTech filed the present Motion to Alter or Amend Judgment.

---

[1] This procedural history is more fully described in the opinion of the court. *Titan Atlas Mfg., Inc. v. Sisk*, Nos. 1:11CV00012, 1:11CV00068, 2013 WL 3283543 (W.D. Va. June 28, 2013).

StructurTech alleged in support of its Motion to Intervene that it had sold its business manufacturing mine ventilation products, including 3D Panels, to Titan in 2010 pursuant to an Asset Purchase Agreement.  The Asset Purchase Agreement contains representations and warranties as well as a promise by StructurTech to indemnify Titan for any losses resulting from any breach by StructurTech of the representations and warranties.  StructurTech asserted that in January of 2013, Titan filed suit against it in state court in New York seeking indemnity under the Asset Purchase Agreement for losses, including attorneys' fees, incurred by Titan in the litigation in this court.  Counsel for StructurTech has represented that the New York action has not progressed beyond the pleading stage, although the state judge has denied a motion to dismiss made by StructurTech.[2]

In addition, as part of the 2010 Asset Purchase Agreement, Titan became indebted to Franz X. Meier, one of the putative interveners and a party to the Asset Purchase Agreement, for $1 million, which debt is secured by a mortgage on South Carolina real estate conveyed as part of the asset purchase.[3]  The Asset Purchase Agreement contains a setoff provision allowing a deduction from indebtedness

---

[2]   The Asset Purchase Agreement contains a provision entitled "Dispute Resolution," providing that the agreement shall be construed according to New York law and that "any such proceedings will be subject to the exclusive jurisdiction of the Federal and State Courts in New York County." (Proposed Compl. Ex. A, art. 12.)

[3]   It is alleged that Franz X. Meier later assigned his rights under the note and mortgage to XJM Company, LLC, another one of the parties seeking to intervene.

owed by StructurTech for any breach of the representations and warranties. StructurTech alleges that Titan has asserted a right of setoff under this provision in a South Carolina mortgage foreclosure proceeding, claiming indemnity for its losses in the litigation in this court.

In its Motion to Intervene, StructurTech averred that if it was allowed to intervene, it would file a complaint seeking a declaratory judgment against Titan, in which it would assert that PMR's claims in this action arose solely out of Titan's infringing conduct and not for any act or omission by StructurTech and thus it is not obligated to pay any indemnity to Titan under the Asset Purchase Agreement. Counsel for StructurTech disclaims any intent to reopen the court's prior determinations that PMR's patent is valid and that Titan and Strata infringed that patent.

The Motion to Alter or Amend Judgment filed by StructurTech has been briefed and orally argued and is ripe for decision.

II

A motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure, "may only be granted in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent

manifest injustice." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (internal quotation marks and citation omitted). "It is an extraordinary remedy that should be applied sparingly." *Id.*

In support of its present motion, StructurTech asserts that the court erred as a matter of law in its prior analysis of the standard for granting intervention. It also contends that it has new evidence not previously considered that supports its request to intervene. I will consider these arguments in order.

### A.  STANDARD FOR INTERVENTION.

The first ground of the Motion to Alter or Amend Judgment concerns the proper standard for granting intervention. While StructurTech contends that the court erred as to one specific aspect of the applicable standard, for completeness' sake I will discuss the standard as a whole, both as to intervention as a matter of right, as well as discretionary intervention.

StructurTech contended in its Motion to Intervene that it was entitled to intervene as a matter of right. Under the Rules, the court must permit anyone to intervene as of right who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Intervention of right "may be subject to appropriate conditions or restrictions

responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24 advisory committee note (1966 amendment). Thus, the four requirements are (1) timeliness, (2) interest, (3) impairment of ability to protect the interest, and (4) inadequate representation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). Timeliness is left to the court's discretion, and the other three requirements are questions of law. *Patterson v. Shumate*, No. 88-2195, 1990 WL 122240, at *1 (4th Cir. Aug. 27, 1990) (unpublished). Courts should not consider judicial economy when evaluating a motion for intervention of right. *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). Finally, "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotation marks and citation omitted). Based on these factors, StruturTech has not demonstrated a right to intervene.

*Timeliness.*

Timeliness is considered in light of the other three factors. *NAACP v. New York*, 413 U.S. 345, 365-66 (1973) ("Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances."). When assessing the timeliness of an intervention motion, "[a] reviewing court should

7

look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). "The most important consideration is whether the delay has prejudiced the other parties." *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980).

There is a "general policy to discourage postjudgment intervention," but a postjudgment intervention motion can be timely. *Brink v. DaLesio*, 667 F.2d 420, 429 (4th Cir. 1981). In *Brink* the Fourth Circuit held that postjudgment intervention was appropriate where the applicant's "rights were being litigated," reasoning that "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive." *Id*. at 428. However, the applicant's knowledge informs timeliness. In *NAACP* the Supreme Court held that the district court did not abuse its discretion in denying an intervention motion where the "appellants failed to protect their interest in a timely fashion." 413 U.S. at 367. There, the applicants were aware that summary judgment would soon be entered, but failed to take "immediate affirmative steps to protect their interests" by cooperating with the prosecuting agency or making an immediate motion to intervene to the court. *Id.*

Although not the deciding factor, timeliness counseled against granting StructurTech's Motion to Intervene. Titan and PMR argued that StructurTech's

8

motion was untimely because it was filed ten months after Titan filed suit against StructurTech in New York, invoking the indemnity provision of the 2010 Asset Purchase Agreement. StructurTech, on the other hand, argued that timeliness should be measured from the court's order in June defaulting Titan — four months before its Motion to Intervene was filed. Even accepting that assertion, four months is a significant delay given StructurTech's desire to determine its liability other than in the New York lawsuit. *See NAACP*, 413 U.S. at 367 ("[T]he record amply demonstrates that appellants failed to protect their interest in a timely fashion after March 21, 1972, the date they allegedly were first informed of the pendency of the action. At that point, the suit was over three months old and had reached a critical stage.").

*Interest.*

StructurTech certainly has an interest in whether the Asset Purchase Agreement requires it to indemnify Titan for certain patent infringement claims, but StructurTech has no protected interest in the cases in this court. The interest asserted by the applicant seeking to intervene of right must be "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). In the Fourth Circuit, an interest contingent upon the outcome of other pending litigation constitutes a significantly protectable interest. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). The Fourth Circuit allows intervention "in a dispute between

an insurer and its insured even when the intervenor's interest is contingent on the outcome of other litigation." *Id.* at 261. StructurTech's situation, however, is different. StructurTech argues that its disputes with Titan in New York and South Carolina are influenced by Titan's dispute with PMR in this court. But StructurTech does not dispute facts that form the substance of the consent judgments here, and StructurTech admits that it is not part of that dispute.

*Impairment.*

It is the factor of impairment upon which StructurTech primarily pins its hopes. It argues that without intervention, it "will necessarily be impaired or impeded in its ability to protect its interest if the long history of this litigation has to be unraveled by any other court." (Mot. Alter Amend J. 3.) StructurTech contends that practically speaking only this court can unravel the complex factual history of claims made in this court and resolve the indemnity dispute between Titan and StructurTech. I reject that contention. I must presume that other judges in other courts are equally capable of fairly and competently judging the merits of StructurTech's claims and proof. Indeed, I surmise that StructurTech is motivated to intervene here primarily in order to escape a venue that it has found inhospitable in light of the New York court's denial of its motion to dismiss, but which venue it cannot otherwise escape because of the mandatory venue provision of the Asset Purchase Agreement.

Even were this court to have a head start in resolving the indemnity claim by virtue of its history with these consolidated cases, judicial efficiency is not a consideration in intervention of right. *In re Sierra Club*, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance. Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").

StructurTech asserts that several courts have held that "'[a]n indemnitor may be allowed to intervene in a lawsuit brought against an indemnitee in order to protect its interest under an indemnity agreement.'" (Mem. Supp. Mot. Intervene 5 (quoting *Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 685 (Fed. Cl. 2006).) However, it cites cases where indemnitors actively providing legal defenses disputed their indemnification responsibilities, or cases where the indemnitor disputed that the defendant was actually liable. Neither situation is present here. StructurTech also cites *Eli Lilly & Co. v. Synthon Laboratories, Inc.*, 538 F. Supp. 2d 944 (E.D. Va. 2008), to support its intervention motion. There, the court held

> The general rule is that parties have a right to dismiss a case . . . by agreement, without seeking prior approval of the Court. This is generally true even if a motion to intervene is pending and the potential intervenor objects. However, . . . [t]here may indeed be circumstances where an intervenor could and should be treated as a *de*

11

> *facto* party and the Court might invoke equitable principles to estop the stipulating parties from invoking a rule which would prejudice the rights of a party whose motion to intervene is pending.

*Id.* at 946-47 (internal citations omitted). StructurTech argues that it has such an equitable circumstance because "[Titan's] indemnity claim is based on this case, and yet [Titan] sought to dismiss this case as soon as it learned of StructurTech's intention to file for intervention." (Reply Supp. Mot. Alter Amend J. 4.) In contrast to the cited indemnification cases and *Eli Lilly & Co.*, StructurTech has not shown how denying the intervention motion impacts its indemnity agreement with Titan.

StructurTech's argument on error of law is based on semantics. It argues that the court committed an error of law because "the correct legal standard is not whether without intervention there remains the possibility that the dispute 'can be properly resolved,' but whether this litigation would 'as a practical matter impair or impede' StructurTech's ability to protect its interest." (Mot. Alter Amend. J. 3.) The court's Order states:

> The settlement would not prevent StructurTech from defending the purported claim of indemnity brought by [Titan] in the existing legal actions between StructurTech and [Titan] in New York and South Carolina, nor is there any provision in the proposed Consent Final Judgment and Permanent Injunction that would prejudice StructurTech in defending against such an indemnity claim since StructurTech does not dispute that PMR's '231 Patent is valid and enforceable and that [Titan] should be enjoined from infringing it.

(Order, Oct. 21, 2013, at 2.)  The court's Order clearly considered prejudice and whether StructurTech would be impaired or impeded.  The cases cited do not suggest that StructurTech has a clear "significantly protectable interest" that the court has overlooked.

*Inadequate Representation.*

Inadequate representation is the final requirement for intervention of right. The "burden of showing an inadequacy of representation is minimal."  *Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (citing *Trbovich v. UMWA*, 404 U.S. 528, 538 (1972)).  Many factors may suggest inadequate representation, including divergent interests.  *See In re Sierra Club*, 945 F.2d at 780-81 (finding an abuse of discretion in denying intervention of right due to the divergence of interests between the Sierra Club, which represented environmental activists, and a South Carolina environmental agency, which represented all state citizens). New legal arguments from the applicant may also suggest inadequate representation.  *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 291 (4th Cir. 2009) (unpublished) ("Movants have also advanced some significant legal points that PSC did not present.")  Finally, if the applicant has superior knowledge and stronger incentives, that may also suggest inadequate representation. *Id*. at 291 ("These factual challenges support Movants' claims that their superior knowledge

13

of railroad crew transportation and their greater incentive to defeat JLS gives them a significant advantage over PSC in their ability to litigate this case.").

StructurTech asserted inadequate representation because its interests are in conflict with Titan's, and because "it knows more about the particular part of the case as to which intervention is sought than do existing parties." (Mem. Supp. Mot. Intervene 8.) It says, "Compared to [Titan], StructurTech has superior knowledge of its own acts or omissions." (*Id.*) While true, StructurTech's acts or omissions are not at issue in this court. The superior knowledge must relate to a subject in the pre-intervention litigation. *See, e.g., JLS, Inc.*, 321 F. App'x at 290.

*Permissive Intervention.*

Permissive intervention is discretionary. *Hill v. W. Electric Co.*, 672 F.2d 381, 386 (4th Cir. 1982). It is appropriate when an applicant "has a claim or defense that shares with the main action a common question of law or fact," but "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The court can, however, consider "judicial economy and need for guidance." *In re Sierra Club*, 945 F.2d at 779.

StructurTech argued that there is a common question of fact: "whether StructurTech committed any acts that would make [Titan] liable to PMR." (Mem. Supp. Mot. Intervene 9.) However, the primary question of fact in these

14

consolidated actions was whether Titan infringed the patent, not whether StructurTech was involved in Titan's infringement or whether StructurTech was required to indemnify Titan. Given that StructurTech does not dispute that Titan infringed the patent, StructurTech's argument is unconvincing.

The difference between permissive intervention and intervention of right is the applicant's stake in the litigation at issue. "The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case. He is at liberty to assert and protect his interests in some more appropriate proceeding." *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 524 (1947). Whether the applicant can file another suit is key to deciding on permissive intervention. In *Francis v. Chamber of Commerce*, 481 F.2d 192 (4th Cir. 1973), the Fourth Circuit affirmed the district court's decision to deny permissive intervention to the Chamber of Commerce, reasoning that the Chamber would "not be precluded from later pressing its interests in another suit." *Id.* at 195. It rejected the Chamber's argument that it would be disadvantaged in later suits due to the district court's ruling. It noted that the only legal holding was that the Chamber would not be permitted to intervene, and reasoned that "[i]n view of the fact that the district court's discussion of the Chamber's position was *dicta*, we fail to see how it might be impaired or impeded in asserting its position in some

future litigation." *Id.* at 195-96 (footnote omitted). Similarly, this court only denied StructurTech's intervention motion. There was no determination of whether StructurTech should indemnify Titan, and StructurTech was not the subject of PMR's claims. The primary outcome was simply that Titan and PMR agreed that Titan was enjoined from infringing PMR's patent. StructurTech's indemnity obligation is collateral, and there is no legitimate reason why another court could not adequately address the issue.

### B. NEW EVIDENCE.

New evidence can support a motion to alter or amend judgment. The party must demonstrate that:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (quotation marks and citation omitted). Diligence is a crucial consideration:

> [T]o support a motion for reconsideration, the movant is obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing. Evidence that is available to a party prior to entry of judgment,

therefore, is not a basis for granting a motion for reconsideration as a matter of law.

*Id.* (internal quotation marks and citations omitted).

StructurTech alleges that it has new evidence "that [Titan] has assigned to PMR its claim for indemnification under the 2010 Asset Purchase Agreement between [Titan] and StructurTech." (Mot. Alter Amend J. 2.) The evidence is an affidavit from an owner of XJM Company, Deborah Stocker-Meier, stating that she was told by Jeremy Blackburn that Titan was settling with Sisk by selling Titan's New York case to Sisk. The affidavit has sparked a hearsay dispute between the parties, including a disagreement over whether Blackburn had the authority to speak for Titan.

Regardless of the objections to the affidavit, this evidence, even if true, does not support the Motion to Alter or Amend Judgment. Even if there was some collusion in the assertion of the indemnity claim, I find that StructurTech's ability to resist the indemnity claim is not impaired by refusing intervention.

III

For the foregoing reasons, it is **ORDERED** that the Motion to Alter or Amend Judgment (ECF No. 368) is DENIED.

ENTER: March 4, 2014

/s/  James P. Jones
United States District Judge